## WILLIAM REA

*v.*

## GEORGE W. FORREST.

1. JUDGMENT—*whether bought for benefit of defendant therein.* Where a complainant bought a judgment against a defendant, under which he redeemed land sold under execution against him, and bid, in addition to the redemption money, enough to satisfy his execution, taking the certificate of purchase in his own name, under which he acquired the absolute title, which he disposed of for his own benefit, it was *held*, that he could not have the amount he paid

for the assignment of the judgment, and to redeem the land, applied in payment of judgments held by the defendant against him, even though done on defendant's request, without showing that he had lost something in the transaction.

2. ASSIGNEE OF JUDGMENT—*right to enforce payment in equity of one fraudulently obtained.* Where, at the instance of a complainant, the defendant borrowed $300, on short time, of one S, giving his note therefor, with a power to confess judgment thereon, and gave as collateral security a note, in his favor, of $1000, to be forfeited in case prompt payment was not made of the $300 note, which the complainant agreed with defendant to pay, and on his failure to pay the same S brought suit on the collateral, on which he collected some $700 or $800, whereby the defendant lost the collateral of $1000, and S afterwards, without the knowledge of defendant, took judgment, by confession, against the defendant on the $300 note, and assigned the same to the complainant, who sought to have the same set off in equity, and applied on judgments of the defendant against him, having knowledge of the consideration of the assigned judgment, it was *held,* that a court of equity would not tolerate such a proceeding, or allow the same to be set off.

3. Where a judgment is void in equity, as having been fraudulently obtained as by confession, under a power of attorney, upon a note after it was paid, an assignee of such judgment, either with or without notice of the facts, can not enforce its payment in a court of equity, he occupying no more favorable position in such court than the plaintiff in the judgment.

4. JUDGMENT — *when fraudulent and void.* Where the payee of a note more than reimburses himself from a note assigned to him by the maker as collateral security, and retains the collateral, he will not be entitled to enforce payment of the principal note thus paid; and if he takes a judgment thereon, under a power of attorney attached thereto, without the knowledge or consent of the maker, it will be fraudulent and void.

5. CHANCERY—*adjustment of claims where one has recovered as to an indemnity.* Where a complainant induced a defendant to borrow $300 and give his note therefor, secured by the assignment of a note of $1000, held by the defendant, as collateral security, agreeing to forfeit such collateral if prompt payment was not made of the $300 note, and the complainant agreed with the defendant to pay the same, but did not, whereby the defendant lost the collateral, it was *held,* that if the defendant recovered judgment against the complainant for $1000, the damage sustained by loss of the collateral, without paying the $300 note, the complainant, on bill in equity to have the judgments of defendant against him satisfied, was entitled to be credited with the $300.

APPEAL from the Circuit Court of Macon county; the Hon. C. B. SMITH, Judge, presiding.

William Rea filed his bill in chancery, in the circuit court of Macon county, against Isaac D. Jennings, sheriff of Macon county, and George W. Forrest, alleging that on the 19th day of November, 1867, in the circuit court of Macon county, one James Millikin recovered a judgment for $993.75, and costs of suit, against one Hiram St. John and said Rea, which judgment was, on the 28th of June, 1871, assigned to said George W. Forrest; that on the 28th of March, 1868, said Forrest recovered a judgment, in said Macon circuit court, against said St. John and Rea, for the sum of $721.50, and costs of suit; that on the 18th of March, 1871, said Forrest recovered a judgment against said Rea, in said Macon circuit court, for $1000, and costs of suit; that executions were issued on each of these judgments within one year of their respective dates; that Forrest caused *alias* executions to be issued thereon, on the 5th of July, 1873, which were delivered to Jennings, as sheriff of Macon county, to execute; that said sheriff has been instructed by Forrest to levy the said executions, forthwith, upon the property of said Rea, and is about to proceed to levy the same.

It is further alleged, that before said 5th of July, 1873, Rea fully paid and discharged each of said judgments, upon which said executions have been issued, in money and property paid to Forrest directly, and in moneys paid divers persons for the use and benefit of said Forrest, and at his request; that such payment ought to be applied to the satisfaction of said judgments, but that Forrest disputes the amount of such payments, and refuses to satisfy said judgments.

It is further alleged, that one Thomas O. Smith obtained a judgment, by confession, in his favor, against said George W. Forrest, in the Superior Court of Cook county; that execution was issued on said judgment by the clerk of said court, on the 15th day of July, 1873, directed to the sheriff of Macon county, Illinois, to execute; that said sheriff, on the 19th day of July, 1873, demanded payment of said Forrest of the amount due on said execution; that said Forrest replied to such demand,

that he had no money or property with which to pay or satisfy said execution; that said sheriff was unable to find any property belonging to said Forrest in Macon county, on which to levy said execution, and on the 21st day of July, 1873, and before the commencement of this suit, returned said execution, indorsed "no property found;" that on the 21st day of July, 1873, and before the commencement of this suit, said Smith, for a good and valuable consideration paid him by said Rea, assigned to said Rea the said last named judgment.

It is, also, further alleged, that Forrest is wholly insolvent, and has no property, liable to execution, out of which the judgment so assigned by Smith to Rea can be made.

The prayer of the bill is, that an account be taken of the payments made by Rea on said judgments, and each of them; that in case said judgments shall be found to be satisfied, as aforesaid, said Forrest be ordered and decreed to satisfy the same of record, and, in default thereof, that the master in chancery for Macon county enter said several judgments satisfied of record; that in case said Rea shall be unable to establish the fact that said judgments have been fully paid, it is prayed that so much of said judgment assigned to him by said Smith as may be necessary, may be allowed, credited and set off. There is, also, a prayer for general relief.

The answer puts in issue the material allegations of the bill, and in respect of the judgment assigned by Smith to Rea, alleges, that if Rea has become, either with or without consideration, the assignee of any judgment in favor of Smith against Forrest, as alleged in the bill, he did so with full knowledge that the judgment had been fraudulently obtained in the name of Smith, without notice to or knowledge of Forrest, and that Smith had no just cause of action; that Rea, after the issuance of the executions against him, as alleged in the bill, and with the fraudulent intention of hindering and delaying Forrest in the collection of his judgments, and well knowing that Smith had no just demand against Forrest, and that any claim on his part to be entitled to judgment was a mere

pretext, etc., combined and confederated with Smith, and procured Smith to obtain the judgment, to the end that Rea might avail himself of it, etc.

The court referred the cause to the master in chancery, to take and report the evidence, and also that he report his conclusions on the evidence to the court.

The master, in his report, states the account between the parties, as follows:

*Rea's Credits.*

| | |
|---|---:|
| Aikin judgment against Forrest - - - - | $66.00 |
| Lichtenberger judgment against Forrest - - | 317.00 |
| Mary Spooner    "    "    "  - - - | 416.00 |
| Receipt, Exhibit C, by Forrest - - - - | 271.00 |
| Interest on Aikin judgment - - - - | 25.74 |
| Interest on Lichtenberger judgment - - | 143.13 |
| Interest on Spooner judgment - - - - | 112.32 |
| Interest on Exhibit C - - - - - | 126.12 |
| Total - - - - - - - | $1477.31 |

*Charges against Rea, being Forrest's Credits.*

| | |
|---|---:|
| Balance on settlement of individual accounts, outside of judgments, Feb. 25, 1871 - - - | $184.18 |
| Interest to Jan. 3, 1876, at 6 per cent - - | 53.65 |
| Judgment March 28, 1868 - - - - | 721.50 |
| Interest to date - - - - - - | 339.70 |
| Costs of suit - - - - - - - | 35.70 |
| Judgment March 18, 1871 - - - - | 1000.00 |
| Interest to date - - - - - - - | 287.50 |
| Judgment Nov. 19, 1867 - - - - | 993.75 |
| Interest to date - - - - - - - | 484.16 |
| Total - - - - - - - | $4100.10 |
| | 1477.31 |
| Balance due Forrest - - - - | $2622.79 |

Exceptions, which need not be set out in detail, were filed by Rea's counsel to the master's report, but overruled by the

master. These exceptions were again urged in the circuit court, but were overruled by the court; but the court added to Rea's credits $300, residue of money paid Race & Co. by St. John, and interest thereon from April 1, 1868, amounting in all to $440.51, which left a balance due Forrest of $2182.29.

The court, thereupon, decreed that Forrest be restrained from collecting $1917.81, demanded by the executions of date July 5, 1873; that the sheriff return the execution in favor of Millikin, dated November 19, 1867, restrained by order of court, and wholly refrain from collecting any part thereof; that he return the execution in favor of Forrest, upon judgment dated March 28, 1868, enjoined by order of court to the amount of $439.90, and, as to that amount, desist from the collection of said judgment; but as to the residue of said judgment, and as to the judgment of date March 18, 1871, the injunction was dissolved, and Forrest permitted to proceed with his collections, at law.

Messrs. CREA & EWING, Mr. A. J. GALLAGHER, and Mr. A. B. BUNN, for the appellant.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

Appellant insists that he should have been allowed a credit for $590, and interest thereon from 1869, paid by him on the judgment in favor of Millikin, against Forrest; and also that he should be allowed a credit of $250, and interest thereon from 1869—amount of judgment of Peddecord & Burrows against Forrest, which he paid. He claims that he paid these sums by the request of Forrest, and for his benefit. It appears, the way appellant paid these judgments was this : Execution had issued upon the Millikin judgment and been levied on certain lands of Forrest. The Peddecord & Burrows judgment was junior to that judgment. After the expiration of twelve months, and before the expiration of fifteen months from the

date of the sale under the Millikin judgment, execution was issued on the Peddecord & Burrows judgment, appellant purchased that judgment, and, by virtue of the execution, redeemed from the former sale as a judgment creditor, bidding in his own name, in addition to the amount of the redemption money, the amount necessary to the satisfaction of the Peddecord & Burrows judgment, and the property was struck off and sold to him. By virtue of this purchase he obtained title to the property of Forrest which had been levied upon. Forrest denies that the purchase of the Peddecord & Burrows judgment, and the redemption thereunder, were made at his request or for his benefit; so, on this point, we may regard the evidence as equally balanced.

We do not regard the circumstances as conclusive in favor of appellant. The only one of much significance, in his favor, is, Forrest, after the lien of the Millikin judgment had attached, had conveyed the property with covenants of warranty to St. John, and, after appellant obtained title, he claims to have released Forrest from those covenants.

On the other hand, it would seem, that, if the purchase of the judgment and the redemption were for Forrest, either the certificate of purchase would have been assigned to him, or the property would have been, in some way, held and used for his benefit. But this is not pretended. It seems to be conceded that the title vested in appellant was absolute, and that he has held and disposed of the property without regard to Forrest, as best comported with his views of his own interests. It would, in no view, appear right to charge Forrest with the amount of these judgments, without showing that, otherwise, appellant must lose that amount. For aught that appears, the property may have been worth much more to appellant than it has cost him. If he may require Forrest to repay him what he has expended, Forrest is surely entitled to have him account for what he has received, and we have discovered nothing upon which a balance could be decreed appellant upon such an accounting.

It is further claimed that appellant should have been allowed credit for the amount of a judgment purchased by appellant of one Thomas O. Smith against Forrest. We are of opinion that claim is without merit.

As we understand the evidence, the facts in explanation of the nature of the claim, are, in brief, these: Forrest was indebted to J. R. Race & Co., and, to secure his indebtedness, deposited with them a note he held on St. John for $1000. St. John paid J. R. Race & Co. $600, for which they gave him a receipt but indorsed no credit on the note.

Subsequently, St. John, it seems, applied to appellant for money, and an arrangement, in substance as follows, was effected: The $1000 note deposited with J. R. Race & Co. was taken up by Forrest, and the receipt for the $600 which St. John had paid on the note was returned to him. No credit was indorsed on the note, and it was treated by all the parties as if no payment had been made upon it. A loan of $300 was then made of Thomas O. Smith, on short time. Forrest's note was given for the amount, and, to secure the payment of his note, he deposited with Smith the $1000 St. John note, agreeing that if his note should not be promptly paid, Smith should be entitled to that note. This all appears to have been at appellant's instance, and he undertook to keep Forrest harmless against his $300 note by paying the same for him. It was also agreed that $271 of the balance of the amount which St. John had paid to J. R. Race & Co. should be credited on a judgment in favor of Forrest, against appellant and St. John. We are of opinion, also, that a fair conclusion from all the evidence is, that if appellant kept his agreement with Forrest and paid his note of $300 to Smith, so as to save him from loss on that account, the judgment was to be further credited with the sum of $300, making the credits to be allowed on the judgment in all $571, or, in other words, by this arrangement taking the $600 credit from the $1000 note, where it in the first instance belonged, and placing it on the judgment, less $29.

Appellant did not pay the $300 note to Smith, nor was it paid by Forrest; and Smith, accordingly, after its maturity, but without canceling or surrendering it, proceeded to and did enforce collection of the $1000 note, realizing thereon some $700 or $800, so that Forrest entirely lost this note. Afterwards, Forrest obtained judgment against appellant, on account of his agreement to save him harmless in this transaction, for the amount of $1000, which judgment is still held by Forrest and is one of those of which satisfaction is sought to be decreed in this suit.

Afterwards, it appears, Smith had judgment entered by confession, on the note of Forrest to him for $300, by virtue of a power of attorney annexed, for some $2100, which judgment appellant purchased and had assigned to him, and this is the judgment which he claims the court erred in not allowing him the benefit of.

It is too clear to admit of discussion, that Smith was not entitled to retain the collateral, reimburse himself, and more, from it, and then enforce payment of the note. No court of equity can tolerate such a proceeding as that. Appellant was, evidently, fully aware of the consideration for this judgment and the circumstances under which it was obtained. Forrest had no notice of the entry of the judgment, and, after he lost his collateral, had no reason to anticipate that judgment would be taken on the note. Without deeming it necessary to enter into any elaborate discussion of the facts and the legal principles applicable, we think it sufficient to simply declare as our conclusion, that, under the facts proved, the judgment was fraudulent and void as against Forrest, and, consequently, appellant as assignee, either with or without notice, is entitled to occupy no more favored position than Smith would occupy, were he attempting to enforce it through a court of equity.

The court, therefore, did not err in refusing to allow appellant the amount of the judgment.

We agree with appellant, that he, having been made to respond to appellee in a judgment of $1000 for his default in

paying the $300 note, is entitled to be credited on the judgment against himself and St. John with the balance of the $600—namely, $300—which he would have had, but for the giving of the $300 note. The judgment, presumptively, gives Forrest all he was entitled to, and, therefore, restores to him the $300 which he loaned at appellant's request, and upon his guaranty to St. John, and leaves him, with reference to appellant, as if he had retained the whole $600 which St. John paid. But this was also the view of the court below, and, by its decree, he was allowed credit for this amount. The master in chancery, in his report, only allowed him credit for $271, on account of this transaction. This amount was increased by the decree of the circuit court adding thereto $300, thus increasing that item to $571, still leaving $29 to complete the $600 which it would seem should have been allowed to appellant, and we are not entirely clear but that, in justice, this should be added to the other allowances of appellant. Still, it appears, when the transaction occurred, Forrest gave St. John a receipt, instead of for $300, only for this $271, to be credited on the judgment, and probably the more reasonable conclusion is, that St. John or appellant, in some unexplained way, had this $29 from Forrest, so that in reality he has had only the benefit of the $571.

The amount of this discrepancy is too small, in view of the uncertain character of the evidence relating to it, to alone justify a reversal of the decree.

*Decree affirmed.*