[No. 12781.    Department One.    March 24, 1916.]

NELLIE G. MILLER, *Respondent*, v. FRANK S. MILLER,
*Appellant*.[1]

JUDGMENT—FOREIGN JUDGMENT—WARRANT OF ATTORNEY TO CON-
FESS—FULL FAITH AND CREDIT. A judgment upon a note entered upon
a warrant of attorney, contained in the note, to confess judgment
without personal service, is a judgment within the meaning of the
clause of U. S. Const. and the act of Congress requiring full faith and
credit in each state to judicial proceedings of every other state; and
when rendered in the state where the debtor resided when the war-
rant was executed in strict conformity to the power, and recognized
in such state as a valid judgment, will be given effect in this state al-
though our laws do not authorize the practice of entering judgment
by confession on a warrant of attorney.

SAME—FOREIGN JUDGMENTS—PROOF—PERSONAL SERVICE—STATUTES.
Rem. & Bal. Code, § 1255, providing that a judgment for debt rendered
in any other state against a resident of this state shall not be of
any higher character as evidence of indebtedness than the original
claim or demand, unless rendered upon personal service of summons,
notice, or other due process, is merely intended to make a distinc-
tion between judgments *in personam* and *in rem;* and does not mili-
tate against the giving of full faith and credit to a judgment of a
sister state rendered upon a warrant of attorney to confess judg-
ment, as the same is a judgment *in personam*.

EVIDENCE—JUDICIAL NOTICE — FOREIGN JUDGMENTS — ACTIONS.    In
determining whether the court of a sister state had jurisdiction to
render a judgment sued on, judicial notice will be taken of the laws
of such state; and it is therefore unnecessary to plead or prove that
the court was a court of record.

LIMITATION OF ACTIONS—TOLLING STATUTE—PAYMENT ON NOTE—
EVIDENCE—SUFFICIENCY. A finding that a payment was made on a
note at the date shown by the indorsement, so as to toll the statute
of limitations, is sustained by the evidence, although contradicted
by the maker, where the maker had only his memory to rely on
after the lapse of years, and there was nothing to show that the
indorsement, which was a declaration against interest, was not made
at the time it is purported to be made.

SAME—TOLLING STATUTE—ADVANCE PAYMENT OF INTEREST. Where
the statute of limitations against a note is tolled by a payment of

[1]Reported in 156 Pac. 8.

interest in advance, the limitation commences to run from the time
to which interest is paid.

EVIDENCE—JUDICIAL NOTICE—FOREIGN JUDGMENTS—ACTIONS.    In
order to give full faith and credit to a judgment of a sister state,
the court may take judicial notice of all the statutes of the state
which must have been taken into consideration in entering the
judgment, including the statute of limitations.

LIMITATION OF ACTIONS—TOLLING STATUTE—ABSENCE FROM STATE
—ACTION ON JUDGMENT—PRESUMPTION.    Where the record in an ac-
tion upon a judgment of a sister state shows that the debtor removed
from such state at some undisclosed date between the time of the
accrual of the cause and the commencement of the action, it cannot
be presumed that the action was barred by lapse of time, in view of
Rem. & Bal. Code, § 168, suspending the statute of limitations during
the absence of the debtor from the state.

Appeal from a judgment of the superior court for Pierce
county, Chapman, J., entered September 12, 1914, upon
findings in favor of the plaintiff, in an action to recover
upon a foreign judgment, tried to the court.    Affirmed.

*Lund & Lund*, for appellant.

*Knight & Muscek*, for respondent.

FULLERTON, J.—This is an action brought by the re-
spondent against the appellant to recover upon a judg-
ment of the municipal court of Chicago, state of Illinois,
entered in favor of the appellant against the respondent in
that court on February 17, 1913.    The respondent recov-
ered in the court below, and this appeal is prosecuted from
the judgment evidencing the recovery.

On August 22, 1898, the appellant executed and delivered
to one Fredereka A. Miller, a note containing a warrant of
attorney to confess judgment, of which the following is a
copy:

"400.00                          Sterling, Ill., Aug. 22, 1898.

"Four years after date, for value received, I promise to
pay to Fredereka A. Miller, or order, four hundred dollars
....at..........with six per cent interest from date, till
paid, payable annually.    And it is expressly agreed that if

default be made in the payment of the interest when due, the entire principal shall become due and payable and the holder of this note may proceed at his option to collect the same.  And we hereby appoint any attorney of any court of record in any state or territory of the United States, to appear for us in any court in term time or vacation, at any time after date and waive the issue and service of process and confess a judgment against us in favor of the then holder hereof, for the amount of the above note, also interest then due, and costs including twenty-five dollars attorney fee, and to file a *cognovit* for that amount, and an agreement releasing errors and waiving all appeal in said cause, and all advantage which we may be entitled by virtue of any and all exemption laws of the state, and any state or territory where judgment may be entered by virtue hereof, and that no bill in equity shall be filed to interfere with the operation of said judgment.  All signers to this note are principals.  No extension of the time of payment, with or without our knowledge, by receipt of interest or otherwise, shall release us, or either of us, from the obligations of payment.

"Witness our hands and seals the day and year above written.             .          Frank S. Miller (Seal)."

On February 14, 1913, the respondent instituted an action in the municipal court of Chicago to recover upon the note.  In her statement of claim she alleged that the instrument had been assigned to her in writing by Fredereka A. Miller on July 28, 1903, and that there was due thereon the sum of three hundred dollars, with interest from August 22, 1903, for which sum, together with the sum of $25 as attorney's fees, she demanded judgment.  Attached to the statement was the original note, which showed indorsements on the principal sum amounting to $100, and indorsements of payments of interest down to August 22, 1903.  Accompanying the statement was a *cognovit* signed by one Henry Pollenz, who purported to act as the appellant's attorney, in which he confessed that the appellant owed to the respondent the amount demanded in her statement, "and that said plaintiff [respondent] has sustained damages on occasion of the nonperformance of the agreement in said state-

ment mentioned to the amount of five hundred and twenty-three dollars ($523) over and above costs and attorney's fees in this behalf expended; and said defendant [appellant] agrees that judgment may be entered against him for said sum of money, and in addition thereto for twenty-five dollars ($25) to be allowed to the plaintiff for attorney's fees . . ." Thereafter, and on February 17, 1913, the judge of the municipal court directed judgment to be entered for the amount confessed to be due, and granted to the plaintiff leave to withdraw the original note upon filing a certified copy thereof. Judgment was accordingly entered on the same day.

The complaint in the present action was based upon the record of the Illinois court. It was alleged that the municipal court of Chicago is a court of record, that it is accorded general jurisdiction by the statute and laws of the state of Illinois, and that the judgment sued upon was duly rendered and entered of record in such court. The appellant, in his answer, denied these allegations, and pleaded affirmatively that he had been a resident of this state for the past four years; that no service of process was had upon him in the action brought in the Illinois court; that no person was authorized by him, other than by the warrant of attorney contained in the note, to appear for him in that action; that more than ten years had elapsed on February 17, 1913, since an action accrued on the note on which the judgment against him was founded; and that he had made no payments thereon for ten years prior to February 17, 1913, the date on which the purported judgment in the Illinois court was entered against him. Neither party pleaded any statute or laws of the state of Illinois authorizing judgments to be entered by the courts therein in the manner and form in which this judgment was entered. There was no contention, however, that the original agreement was not executed by the appellant, or that he had ever revoked, or attempted to revoke, the authority given therein to enter such a judgment.

On the trial had in the court below, no evidence was offered by the respondent to substantiate the allegations concerning the jurisdiction of the municipal court, the respondent contenting herself with the introduction alone of a duly certified transcript of the proceedings therein. The appellant was permitted, over the objection of the respondent, to introduce evidence on the allegations of his affirmative answer, and the court found in his favor on all of them except the allegations with respect to the payments on the agreement; finding in that regard that the interest had been paid thereon down to August 22, 1903, a period less than ten years prior to the entry of the judgment in the Illinois court.

If we have correctly gathered the first contention made by the appellant, it is that judgments entered upon a warrant of attorney to confess judgment contained in the instrument evidencing the obligation, without personal service on the obligor, are not judgments within the meaning of the constitution of the United States, which requires that full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state, or judgments within the meaning of the act of Congress, passed in pursuance thereof, which provides a mode for authenticating such records and judicial proceedings and which declares that, when so authenticated, they shall have such full faith and credit given them in every court within the United States as they have by law or usage in the courts of the state from whence they are taken. But the authorities, in so far as they have been called to our attention, are against this position. That such judgments are judgments *in personam* and, when regularly entered, have the same effect as any other judgment *in personam*, has been repeatedly held by the highest court of the state of Illinois. *Osgood v. Blackmore*, 59 Ill. 261; *Bush v. Hanson*, 70 Ill. 480; *Frye v. Jones*, 78 Ill. 627; *Keith v. Kellogg*, 97 Ill. 147; *Whitney v. Bohlen*, 157 Ill. 571, 42 N. E. 162.

Owing to the somewhat drastic nature of the proceedings and the possibility of its abuse, the courts have construed the power granted by the debtor with strictness, and have held even slight departures from the granted power sufficient to avoid the judgment (*Grover & Baker Sewing Machine Co. v. Radcliffe*, 137 U. S. 287; *National Exchange Bank of Tiffin v. Wiley*, 195 U. S. 257) yet when the judgment is rendered in strict conformity with the power, and in the state where the debtor resided when the warrant was executed, and is recognized in the state where rendered as a valid judgment, the judgment is uniformly recognized as valid in the sister states, and given effect by their courts. Some of the cases so holding are the following: *Teel v. Yost*, 128 N. Y. 387, 28 N. E. 353, 13 L. R. A. 796; *Cuykendall v. Doe*, 129 Iowa 453, 105 N. W. 698, 113 Am. St. 472, 3 L. R. A. (N. S.) 449; *Richards v. Barlow*, 140 Mass. 218, 6 N. E. 68; *Van Norman v. Gordon*, 172 Mass. 576, 53 N. E. 267, 70 Am. St. 304, 44 L. R. A. 840; *First Nat. Bank of Athens v. Garland*, 109 Mich. 515, 67 N. W. 559, 63 Am. St. 597, 33 L. R. A. 83; *Nicholas v. Farwell*, 24 Neb. 180, 38 N. W. 820; *Crim v. Crim*, 162 Mo. 544, 63 S. W. 489, 85 Am. St. 521, 54 L. R. A. 502; *Coleman v. Waters*, 13 W. Va. 278; *Sipes v. Whitney*, 30 Ohio St. 69.

The same rule obtains even though the laws of the state where the judgment is sought to be given effect do not recognize or authorize the practice of entering judgment by confession on a warrant of attorney. *Cuykendall v. Doe*, 129 Iowa 453, 105 N. W. 698, 113 Am. St. 472, 3 L. R. A. (N. S.) 449. In so far, therefore, as the general nature of the judgment is concerned, it is one to which the courts of this state must give full faith and credit.

The appellant, however, assigns a number of reasons for holding the particular judgment invalid not inherent in its general nature. In support of his first assignment, he calls attention to Rem. & Bal. Code, § 1255 (P. C. 81 § 1869), which provides that a judgment for debt, rendered in any

other state or any territory against any person resident of
this state at the time of the rendition of such judgment,
shall not be of any higher character as evidence of indebted-
ness than the original claim or demand upon which such
judgment is rendered, unless such judgment shall be ren-
dered upon personal service of summons, notice, or other due
process against the defendant therein, and argues there-
from that, since this judgment was not rendered upon per-
sonal service of process, the claim or demand was not proven
by the mere production and introduction in evidence of a
certified copy of the judgment roll. If the statute be read
literally, it unquestionably supports this contention. The
judgment was plainly not rendered upon the service of proc-
ess of any kind, but was rendered upon a warrant of attorney
authorizing a third person to appear and confess such a
judgment. But we cannot think the statute should be con-
strued thus literally. Aside from the fact that to so con-
strue it would render it inimicable to the full faith and
credit clause of the constitution of the United States, before
cited, we think that such was not its intention or meaning.
It was intended, in our opinion, to make a distinction between
judgments *in personam* and judgments *in rem;* that is, a
judgment rendered after an appearance by the defendant or
after actual service upon him, and judgments rendered after
some form of substituted service. No one will deny that a
judgment rendered by a court of this state on an appear-
ance of the defendant, either personally or by a duly au-
thorized attorney, is a judgment *in personam,* regardless
of whether any service of process was made or not, and the
statute can hardly have been intended to make a distinction
in that respect between a local judgment and a judgment of
a sister state. If the judgment sued upon has any validity
at all it has the validity of a judgment *in personam.* It is
not a judgment on a substituted service, but a judgment
rendered after an appearance by the defendant through an
authorized attorney. Being, therefore, a judgment *in per-*

*sonam*, we are constrained to hold it not within the bar of this section of the statute.

A second reason given for holding the judgment insufficient is that there was no proof that the court in which the judgment was rendered, the municipal court of Chicago, was a court of record; a question which was made an issue by the allegations of the complaint and the denials of the answer. But we have held in cases where similar questions arose that, in determining whether the court rendering the judgment sued upon had jurisdiction to render such a judgment, we will take judicial notice of the laws of the state from whence the judgment comes. *Trowbridge v. Spinning*, 23 Wash. 48, 62 Pac. 125, 83 Am. St. 806, 54 L. R. A. 204; *Dormitzer v. German Sav. & Loan Soc.*, 23 Wash. 132, 62 Pac. 862; *Clark v. Eltinge*, 38 Wash. 376, 80 Pac. 556, 107 Am. St. 858. The rule has its foundation in the full faith and credit clauses of the constitution and laws of the United States before mentioned. Since, however, the decisions cited give the reasons for the rule and refer to the cases supporting it, neither the argument nor the citations need be repeated here.

Giving effect to the rule, we find that the general assembly of the state of Illinois, in the act creating the municipal court, have declared it to be a court of record, and to have general jurisdiction over causes such as that on which the judgment in question was rendered. Hurd's Revised Statutes of Illinois for 1909, p. 702; *Gorra v. Sobra*, 151 Ill. App. 288. It follows, of course, that if the court must judicially notice the laws creating the court from which the record comes, and the laws governing the extent of its jurisdiction, it is unnecessary to either plead or prove these laws.

It is next contended that an action upon the agreement was barred by the statute of limitations of the state of Illinois at the time of the entry of the judgment thereon, and, in consequence, any authority vested by the terms of the agree-

ment in the attorney to confess judgment was likewise barred by such statutes. Two reasons are urged in support of this contention, first, that the court was in error in finding from the evidence that interest had been paid on the agreement down to a time within ten years from the date of the entry of the judgment thereon; and second, that since the statute of limitations of the state of Illinois was not pleaded nor proven at the trial below, the court must presume that the statute of that state is the same as the statute of this state, and so presuming, the right of action was barred on the obligation after six years from the date of the last interest payment.

The contention, it will be noticed, assumes that the warrant of attorney to confess judgment contained in the instrument becomes invalid unless exercised prior to the running of the statute of limitations, and that the question can be raised collaterally after the entry of a judgment on the obligation whenever any right is sought to be claimed under the judgment. Our attention has not been called to any statute of Illinois which prescribes such a rule, nor to any decision of the courts of that state which maintains it, and it would seem that some very substantial reasons could be urged against the principle it involves. The rule has, however, been announced in jurisdictions having statutes similar to the statute of Illinois (see *Kahn v. Lesser*, 97 Wis. 217, 72 N. W. 739), and the discussions in these cases would indicate that such is the rule generally prevailing. But the inquiry is one we have found it unnecessary to pursue, as we think the reasons unsound from a more narrow aspect.

On the first of the reasons urged, we are constrained to hold with the finding of the trial court. To contradict the evidence afforded by the indorsement on the agreement, the appellant has only his memory of the transaction, with no special or particular circumstances occurring at the time the payment was made which tends specially to fix the event in his mind, and after the lapse of years it is more than pos-

sible he could be mistaken. More than this, there is nothing to show that the indorsement was not actually made at the time it is purported to have been made. It was thus a declaration against interest, made in writing by the then holder of the instrument, and has the weight of positive evidence. It is not, therefore, to be overcome other than by evidence of equal cogency, and we cannot conclude that the appellant's memory of the transaction is such evidence.

In this connection, the appellant further contends that the indorsement shows an advance payment of interest—that is to say, a payment of interest on August 22, 1902, for the year following, not a payment on August 23, 1903, of interest to that date—and that the limitation commences to run from the time of the payment and not from the time to which the interest is paid. There are decisions which maintain this principle. But these we shall not review, as our own cases, which we think follow the weight of authority, are to the contrary. In *Bank of British Columbia v. Jeffs*, 15 Wash. 230, 46 Pac. 247, we held that, where a creditor, without inadvertence or mistake, receives a payment of interest in advance on a note of a debtor, and does not expressly reserve the right to sue before the expiration of the period for which interest is taken, there is a contract created to extend the time of payment during the period for which interest is paid. The rule was reaffirmed on the second appeal of the cause in *Bank of British Columbia v. Jeffs*, 18 Wash. 135, 51 Pac. 348, 63 Am. St. 875, where cases from other jurisdictions were cited which maintain the principle. If the acceptance of interest in advance on an overdue obligation creates a new contract and estops the holder of the obligation from maintaining an action thereon until the expiration of the period for which the interest is paid, it must follow that the statutory limitation against an action on the obligation begins to run from such period.

As to the second reason, it would seem that if, in order to give full faith and credit to a judgment of a sister state, we

are required to notice judicially the · statutes of that state
defining the extent of the jurisdiction and authority of the
court entering the judgment, we can notice all of the statutes
of the state which must have been taken into consideration
in entering the judgment, even though one of such statutes
be the statute of limitations.   Doing so in this instance, we
find that the statute of limitations of the state of Illinois
permits actions to be commenced on instruments of this char-
acter within ten years after the last payment is. made there-
on.   Hurd's Revised Statutes of Illinois for 1911, p. 1494.
But it is unnecessary in this case to rely upon this principle.
The same result would follow were we to conclude that we
could not judicially notice the statutes of limitations of Illi-
nois and must presume that they are the same as our own.
Under our statute (Rem. & Bal. Code, § 168; P. C. 81 § 81),
the running of the statute of limitations is suspended during
the absence of the debtor from the state.   We know by the
record before us that the appellant removed from the state
of Illinois and took up his residence elsewhere at some period
between the time the last payment was made on the instru-
ment sued upon and the time judgment was entered thereon.
When the removal was made is a question on which the record
is silent.   Clearly, in such a case, we can indulge in no pre-
sumption of fact the effect of which would be to overturn a
judgment of a sister state to which we are admonished by
the paramount law of the land to give full faith and credit.

The judgment is affirmed.

Morris, C. J., Mount, Chadwick, and Ellis, JJ., concur.